

555 California Street
12th Floor
San Francisco, CA 94104

415.875.2300
Fenwick.com

Molly R. Melcher
mmelcher@fenwick.com  |  415.875.2378

June 20, 2024

VIA ECF

Honorable Analisa Torres
U.S. District Court, Southern District of New York
500 Pearl Street
Courtroom 15D
New York, NY  10007

Re:   *Applied Minds, LLC v. Guild Hall of East Hampton, Inc.*, Case No. 1:24-cv-01465-AT

Dear Judge Torres:

Pursuant to Local Rule 37.2 and Your Honor's Individual Practice II(C), Defendant Applied Minds, LLC and third-party MAASS, LLC write to jointly request a pre-motion discovery conference concerning MAASS' compliance with a subpoena issued to it by Applied Minds in this matter. Applied Minds and MAASS set forth their respective positions on the discovery dispute below. Counsel for Applied Minds (Charles Moulins) and for MAASS (Michael Chuven) met-and-conferred telephonically about this dispute for approximately 40 minutes in total, on June 12 and 14, 2024.

***

**Applied Minds' Position**

Applied Minds intends to move to compel MAASS' compliance with the subpoena, with respect to which MAASS has waived any objections because of its failure to timely respond. Applied Minds will also oppose as untimely any motion to quash that MAASS files.

### This Action

Applied Minds is litigating a breach of contract action against Guild Hall of East Hampton, Inc. In the summer of 2021, Guild Hall retained Applied Minds to re-design and oversee renovations of the John Drew Theatre ("Theatre") in East Hampton. Nearly a year later, Guild Hall abruptly abandoned the re-design it commissioned and terminated its contract with Applied Minds for convenience, yet refused to pay Applied Minds an outstanding balance of over $1.8 million for services rendered. On February 26, 2024, Applied Minds filed its Complaint against Guild Hall, seeking to recover its professional fees for the Theatre project.

### The Subpoena Issued to MAASS

MAASS offers consulting services to cultural organizations with respect to design and construction projects. Guild Hall retained MAASS to offer advice and act as one of its representatives on the Theatre project. Applied Minds understands that, in such capacity, MAASS participated in discussions relevant to the dispute, including discussions concerning Guild

Hall's requests to Applied Minds, Guild Hall's budgeting for the project, and Guild Hall's decision to terminate its contract with Applied Minds. Accordingly, on May 24, 2024, Applied Minds served on MAASS a third-party subpoena pursuant to Rule 45, requesting the production of documents relevant to this action. *See* Ex. 1. The subpoena specified a return date of June 6, 2024.

### *MAASS Agreed to Substantial Compliance by June 20, Only to Later Rescind Its Agreement*

MAASS did not substantively respond to the subpoena by the return date. On July 7, 2024, MAASS's then-counsel, Orin Ketyer, belatedly sought from Applied Minds an extension of the time to comply with the subpoena. *See* Ex. 2. Applied Minds pointed out that MAASS had waived all objections to the subpoena by failing to respond by the return date. *Id.* Subject to MAASS' waiver, Applied Minds only agreed to extend the date for producing responsive documents to June 20, 2024 before seeking judicial intervention, "**provided** that [MAASS] confirms its agreement to substantial compliance with all subpoena requests by that date." *Id.* While purporting to reserve objections to the subpoena (which MAASS had already waived by not timely responding), MAASS' then-counsel responded that "we accept your offer . . . on the terms you outlined in your email." *Id.*

However, on June 12, a new and different counsel for MAASS asked for an extension of the agreed-upon document production. Counsel also asked Applied Minds to agree that MAASS would have until after its initial production to bring a motion to quash the subpoena. Applied Minds responded that MAASS was bound by its agreement to substantially comply with all subpoena requests by June 20 and that any motion to quash was already untimely for MAASS' failure to respond to the subpoena. *See* Ex. 3. MAASS' counsel then stated that MAASS would move to quash the subpoena.[1]

### *MAASS Must Produce Materials Responsive to All Subpoena Requests*

*MAASS' Objections Are Untimely and Unsupported*

MAASS is bound both by the Federal Rules and its counsel's agreement to produce materials responsive to all subpoena requests. Rule 45 is clear: objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." *See* Rule 45(d)(2)(B). MAASS made no objections within the required response period and indeed has not served any objections at all. MAASS claims that it "reserved" its objections, but does not dispute that it purported to make this reservation *after* the subpoena response date—when it had already waived any objections under the clear terms of Rule 45. Therefore, any "reservation" of objections was itself untimely, and does not alter the conclusion that MAASS waived any and all objections to Applied Minds' subpoena.

MAASS nevertheless objects to the subpoena as seeking irrelevant information and as unduly burdensome. Setting aside the untimeliness of these objections, the subpoena seeks information relevant to the renovations of the Theatre—the core of the dispute—and to the broader Guild

---

[1] MAASS argues that the subpoena calls for materials protected against disclosure by the attorney-client privilege, the attorney work-product doctrine, or analogous privileges. For the avoidance of doubt, Applied Minds is not seeking to compel MAASS to produce responsive materials protected by these privileges.

Hall capital improvements project.  "'Relevance' is construed 'broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Kiss Nail Prods., Inc. v. Lashify, Inc.*, 2024 WL 1466815, at *2 (S.D.N.Y. Apr. 4, 2024) (Torres, J.) (denying motion to quash).  Contrary to this principle, MAASS argues that discovery should be limited narrowly to the Theatre renovations and exclude any requests that might involve other aspects of the capital improvements project.  Yet, the Theatre renovations were a centerpiece of the broader capital improvements project.  There is no reason to suggest that Guild Hall and MAASS made the artificial distinction proposed by MAASS when discussing key issues such as project fundraising, budgeting, completion timeline, and termination of Applied Minds from the project.  MAASS's untimely relevance argument thus falls flat.

Nor is the subpoena unduly burdensome; its requests reflect MAASS' central role in the dispute.  Indeed, MAASS was a primary representative of Defendant Guild Hall on the project and provided directions to Applied Minds on a day-to-day basis.  And while MAASS suggests that its documents will be duplicative of those possessed by Guild Hall, this argument overlooks the internal communications and work-product that MAASS generated for the project.  For example, Guild Hall does not possess purely internal communications and work-product exchanged between Jonathan Maass (MAASS' principal) and MAASS' consultant Pamela Torres, who also acted as a representative for Guild Hall on the project.  MAASS also complains that the subpoena potentially calls for 20,000 documents.  But it contradicts itself by conceding that its estimated volume "may contain material not relevant to the Guild Hall projects"—and therefore not requested by Applied Minds.  The subpoena thus seeks non-duplicative materials and is proportional to MAASS' high degree of involvement in the project at the heart of this dispute.[2]

MAASS further objects that subpoena compliance will cost "tens of thousands" of dollars.  But it provides no support for this figure, nor does it acknowledge that any costs will be borne by MAASS' insurer.  In fact, before MAASS' reversal of its position on subpoena compliance, MAASS' insurer contacted Applied Minds' counsel (without any prompting by Applied Minds) to say that MAASS intended to fully comply with the subpoena.  And MAASS relies on authority where a district court *denied* a third party's request for an award of subpoena compliance costs.  *In re Honeywell Int'l, Inc. Securities Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) ("[A] non-party can be required to bear some or all of its expense where the equities of a particular case demand it." (Citation omitted.))  MAASS' speculation about the costs of subpoena compliance thus provides no basis for refusing to honor its previous commitment to promptly produce responsive materials.

*MAASS' Purported Motion to Quash Is Untimely*

Any motion to quash must be "timely."  *See* Rule 45(d)(3)(A).  "[I]t is well settled in the Second Circuit that for a motion to quash a subpoena to be 'timely,' it 'must be made prior to the return

---

[2] MAASS' lead authorities are distinguishable because they concern intrusive discovery of parties with no or only tangential involvement in the dispute.  *See, e.g.*, *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 68-69 (S.D.N.Y. 2020) (noting that defendant sought "to depose 21 unnamed putative class members."); *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 WL 4242040, at *1-2 (S.D.N.Y. Sept. 6, 2019) (involving a plaintiff that sought a broad range of documents from a private equity firm that acquired defendant *after* the events giving rise to the dispute).

date of the subpoena.'" *Estate of Tillman by Tillman v. City of N.Y.*, 345 F.R.D. 379, 385 (E.D.N.Y. Feb. 23, 2024) (citation omitted; collecting cases*)*. Not only did MAASS fail to timely bring a motion to quash by the subpoena's return date (June 6), it instead specifically *agreed* to substantially comply with all subpoena requests by June 20. Any motion to quash would therefore be untimely. MAASS does not get a "do over" because it changed its attorneys after failing to comply with the requirements of Rule 45. And MAASS' delay in bringing a motion to quash is particularly prejudicial given Applied Minds' reliance on MAASS' prior representations, and the extremely compressed discovery timeline in this matter (the Court has set close of fact discovery for August 22).

MAASS argues that the Second Circuit's timeliness requirements should be set aside, based on a district court's grant of an untimely motion to quash in *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). But in *Concord Boat*, counsel for the subpoenaed non-party first sought—and was granted by the issuing party—an extension of the subpoena compliance deadline *ten days before the subpoena's return date*. *Id.* at 46. The court's ruling hinged on the finding that, "[b]ased on such a course of conduct, [the third party] reasonably expected that plaintiffs would continue to afford [the third party] an opportunity to informally negotiate the scope of plaintiffs' document request." *Id.* at 52. Here, by contrast, MAASS' counsel only contacted Applied Minds *after* the return date, and therefore the period for timely bringing a motion to quash had already lapsed. At this point, MAASS had already waived all objections and the right to bring a motion to quash, and Applied Minds in no way agreed to reset those deadlines. Instead, Applied Minds made clear that it expected nothing short of MAASS' substantial production of the subpoenaed documents by June 20. What is more, MAASS agreed to those terms. Unlike *Concord Boat*, no "course of conduct" excuses the untimeliness of MAASS' motion to quash.[3] In fact, MAASS' "course of conduct" shows its discovery abuse—forcing Applied Minds to seek a court order to compel MAASS to do what it expressly promised to do.

For these reasons, MAASS must cease delaying and produce all responsive materials immediately. Applied Minds will therefore bring a motion to compel following a pre-motion conference before the Court.

---

[3] MAASS also cites a single Fifth Circuit case to excuse the untimeliness of its motion to quash. *See SEC v. Stanford Int'l Bank*, 2015 U.S. Dist. LEXIS 201228, at *31 (N.D. Texas 2015). But Second Circuit law governs this discovery dispute, making irrelevant the requirements for motion to quash timeliness of other circuits. *See, e.g., Estate of Tillman*, 345 F.R.D. at 385 ("[T]his Court finds no need to look to other circuits when the Second Circuit's view is clear and established.") *Stanford* is further irrelevant because it concerned only the timeliness of *objections* to a subpoena, not of a motion to quash. 2015 U.S. Dist. LEXIS 201228, at *31-33. And the non-party in *Stanford* showed that it received, through no fault of its own, the subpoena merely seven days before the compliance date. *Id.* MAASS, on the other hand, does not dispute that its attorney Orin Ketyer was served 13 days before the return date. *Stanford* is thus of no assistance to MAASS.

**MAASS, LLC's Position**

MAASS maintains that the subpoena in its scope is unreasonable, seeks privileged information and seeks confidential information, which causes an undue burden on MAASS.[4] Moreover, MAASS has not waived its ability to rely on the objections or ability to limit the scope of the subpoena because the return date of the subpoena was extended until June 20, 2024, which makes this motion request timely.

Applied Minds is seeking information that can easily be obtained by the defendant and is using an FRCP 45 subpoena as a means of discovery when it should first seek it from the defendant. Examples of this include, "all documents and communications concerning Your relationship with Guild Hall" or "all documents and communications between You and Guild Hall and/or the Board". Ex. 1. The requesting party, Applied Minds, should seek the information from those sources before burdening a third party. Fishon v. Peloton Interactive, Inc., 336 F.R.D. 67, 69 (S.D.N.Y. 2020) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness pursuant to Rule 45."); see e.g., Alcon Vision, LLC v. Allied Vision Grp., Inc., 2019 U.S. Dist. LEXIS 152073 at *6 (S.D.N.Y. Sept. 6, 2019) (finding that subpoena was an undue burden upon a third party where a party has ample opportunity to obtain the discovery in the action pursuant to FRCP 26(B)(2)(C)(ii). Instead, Applied Minds is seeking it from MAASS, which is improper.

The requests seek irrelevant information, which creates an undue burden. Whether a subpoena imposes an undue burden depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005) (internal citation omitted) (quoting United States v. International Business Machines Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979); In re Terrorist Attacks on September 11, 2001, 523 F.Supp.3d 478, 489 (S.D.N.Y. 2021); see also Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993) ("Discovery of persons not party to the litigation is contemplated by the Rules…the fact of nonparty status may be considered by the court in weighing the burdens imposed by the circumstances.").

Applied Minds has asked MAASS to provide all documents and communications relating to the "theatre project", which is at issue in this litigation, and another project that did not involve Applied Minds, known as the "renovation project". Doing a general search, the anticipated compliance with the documents portion only, which does *not* include communications for both projects, would result in nearly 9100 files; whereas, if it were limited to the "theatre" project at issue in this litigation, the document portion would be far less—an amount that is possibly half of the currently sought total. Doing a general search, the anticipated compliance with the communications portion of the subpoena for both projects would result in nearly 20,000 communications – similarly, if it relates to the theatre portion only - the anticipation would be

---

[4] The parties drafted respective positions and only after receiving MAASS' position, did Applied Minds prepare what amounts to be an opposition brief. Rather than engage in what amounts to a briefing challenge at this stage, Applied Minds' conduct is precisely why motion practice is necessary to fully address these issues as their position is meritless.

that the communications would result in half. The communications and documents would then need to be reviewed for privilege and confidentiality, and relevance as they may contain material not relevant to the Guild Hall projects.

MAASS' status as a third party is a significant factor in the determination of whether compliance would constitute an undue burden. Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988), aff'd, 870 F.2d 642 (Fed. Cir. 1989). Further, the costs of compliance with the subpoena should be born by Applied Minds. See e.g., In re Honeywell Int'l, Inc. Securities Litig., 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (discussing factors for who share bear the costs of production when the target of a subpoena is not a party to the litigation). The anticipated time for compliance here would take a minimum of likely 45 days, but more importantly would result in tens of thousands of dollars to be incurred on behalf of MAASS to comply.

MAASS as a non-party should not be subjected to the burden of having these documents reviewed and produced when they are so broad. Specifically, asking for a project that is not at issue in the litigation and would cause MAASS to incur double the costs for review and production. Moreover, financial and other confidential information of Guild Hall as well as other irrelevant, non-parties, and uninvolved entities, such as those involved in the "renovation project" would be included in the requests, given their current breadth. The requests also would include privileged communications between MAASS and attorneys, such as myself, in the requests as a result of their overly expansive nature. In short, the requests inflict an undue burden upon MAASS when these documents are available from the defendant--Guild Hall-- through general discovery. As a third party with no direct involvement in the underlying dispute, complying with this subpoena, dated May 23, 2024, as presently constituted would result in a significant undue burden to MAASS as it demands the production of an extensive volume of documents that are irrelevant to the core issues of the case, are protected by privilege, or are more readily available from a party to this litigation.

MAASS has not waived the ability to limit the scope and breadth of the subpoena. Undoubtably, the emails attached as Ex. 2, show that the return date of the subpoena was extended until June 20. MAASS agreed to substantially comply with the subpoena, which in its mind meant produce not privileged, not confidential and relevant to the "theatre" material, and MAASS made sure to include a statement in the email to reserve objections. Courts have permitted late motions to quash, even assuming this would be considered it, that are filed beyond the return date of the subpoena. See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (untimeliness of motion excused where requests were overly broad, subpoenaed witness was a non-party acting in good faith, and counsel for non-party communicated concerns with the subpoena and attempted to resolve disputes prior to filing the motion); see also SEC v. Stanford Int'l Bank, 2015 U.S. Dist. LEXIS 201228, *31 (N.D. Texas 2015) (citing several authorities). Thus, in accordance with Federal Rules of Civil Procedure 45(d), if the issues cannot be resolved by conference, MAASS requests authority to file a Motion to Quash or Modify the Subpoena on the above basis.

***

Should Your Honor have any questions as to any of the foregoing, the respective parties, through counsel, can respond to same at the requested discovery conference. We thank Your Honor for your time and attention to this matter.

Sincerely,

| | |
|---|---|
| FENWICK & WEST LLP | KINNEY LISOVICZ REILLY & WOLFF PC |
| */s/ Molly R. Melcher* | */s/ Michael S. Chuven* |
| Molly R. Melcher | Michael S. Chuven |
| *Attorneys for Plaintiff and Counterclaim Defendant Applied Minds, LLC* | *Attorneys for Third Party MAASS, LLC* |