UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APPLIED MINDS, LLC

Plaintiff,

v.

GUILD HALL OF EAST HAMPTON, INC.,

Defendant.

CIVIL ACTION NO.: Civ. 24 Civ. 1465 (AT) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

**I. INTRODUCTION**

Pursuant to a July 2021 contract, Plaintiff Applied Minds, LLC ("AMI") provided design and project supervision services to Defendant Guild Hall of East Hampton, Inc. ("GH"), in connection with GH's renovation of the John Drew Theatre (the "Theatre").  (ECF No. 1 ¶¶ 2, 29, 32; see ECF No. 1-2).  GH paid AMI over $1.6 million for AMI's design services, but when project costs ballooned and community members complained, GH terminated the contract and directed AMI to cease all work.  (Id. ¶¶ 39, 42, 55, 57).  AMI sued GH, seeking to recover over $1.8 million in unpaid invoices.  (Id. ¶¶ 70–84).  GH in turn asserts counterclaims for breach of contract, rescission, and negligent misrepresentation.  (ECF No. 107 at 28–31).

In the latest discovery dispute between the parties, AMI moves to quash subpoenas GH served on three of AMI's customers (the "Subpoenas").  (ECF Nos. 108 (the "Motion"); 112).  GH insists that the Subpoenas are proper and seek relevant information.  (ECF No. 109).  For the reasons set forth below, the Motion is GRANTED and the Subpoenas are QUASHED.

1

## II.BACKGROUND

### A. Factual Background

We summarize only those facts from the parties' pleadings necessary to decide the Motion.

AMI is a Delaware-based provider of technology, design, and consulting services to governmental and non-governmental entities, including companies in the defense, manufacturing, and technology industries. (ECF No. 1 ¶¶ 11, 18–20). GH enlisted AMI for a capital improvement project involving the Theatre, a 90-year-old building that lacked modern audio-visual capabilities, to be completed in time for the summer 2023 season. (Id. ¶¶ 21–27; see ECF No. 107 at 14–17 ¶¶ 2–11).

On July 14, 2021, AMI and GH entered into a contract, the Master Development Agreement (the "Agreement"), pursuant to which AMI was to "deliver a turn-key renovation of the Theatre," and GH would pay AMI's invoices within 30 days of receipt. (ECF No. 1 ¶¶ 28–29 (citing ECF No. 1-2 § 4.1); see ECF No. 107 at 17 ¶ 12). GH agreed to pay AMI $150,000 on execution of the Agreement, and another $150,000 on completion of an initial "seven-week fact-finding and initial design phase." (ECF No. 1 ¶ 30 (citing ECF No. 1-2 § 2.1 & Ex. 1 § 3.1; see ECF No. 107 at 17 ¶ 12). GH also committed to an estimated budget of $2.75 million to re-design and construct the Theatre. (ECF No. 1 ¶ 30 (citing ECF No. 1-2 Ex. 1 § 3.1); see ECF No. 107 at 17 ¶ 13). GH could terminate the Agreement on 30 days' notice to AMI, but any termination would not relieve GH of its obligation to pay outstanding invoices and would require GH to pay AMI's reasonable costs arising from the termination as well as a $150,000 termination fee. (ECF No. 1 ¶ 31; see ECF No. 1-2 §§ 6.2, 6.5).

Over the summer of 2021, based on directions from GH to expand "the extent and complexity of the Theatre's re-design[,]" AMI "developed a design that completely re-imagined the interior of the Theatre." (ECF No. 1 ¶ 32). At this time, AMI was expending at least $200,000 per month in design services. (ECF No. 107 at 20 ¶ 19). In October 2021, AMI submitted to GH a project proposal memorializing the expanded scope of the re-design and estimating a total budget of $10 million to $12 million and costs of $2.4 million. (ECF No. 1 ¶ 34). Without setting a ceiling on the budget, GH "approved the project proposal" and directed AMI to "press forward with project design." (Id. ¶¶ 35–36; see ECF No. 107 at 19 ¶ 16).

On January 6, 2022, AMI provided GH with an increased preliminary estimate of construction costs of $13.8 million, which was subject to further increases due to supply-chain issues and inflation. (ECF No. 1 ¶ 39). GH continued to approve AMI's plans and paid every AMI invoice between July 2021 and January 2022, a total of $1.6 million, without complaint. (Id. ¶¶ 40–43).

In February 2022, GH "orchestrated a public 'first-look'" at the capital improvements project, including the Theatre re-design, to which the East Hampton community had mixed reactions. (ECF No. 1 ¶¶ 44–48). Despite the public debate and criticism, GH continued working with AMI and "expressed no desire to abandon the re-design plans." (Id. ¶ 49). Two months later, in April 2022, AMI presented to GH its complete design plan, including a final construction cost estimate of $18 million, which had increased due to inflation, GH's design requests, and existing physical constraints. (Id. ¶ 50). AMI's presentation also included alternative, lower-cost design options, which GH indicated it would consider. (Id. ¶¶ 51–52).

Apparently facing continued community opposition, on May 6, 2022, GH instructed AMI to cease all work on the project, and on May 22, 2022, sent a written notice to AMI terminating the Agreement "for convenience" and enclosing a check for $150,000 "representing the full termination fee[.]"  (ECF Nos. 1 ¶¶ 53–57; 1-7; see ECF No. 107 at 26 ¶ 33).  By this time, AMI had expended nearly $2.9 million in design services for GH (ECF No. 107 at 22 ¶ 21), so AMI sent GH an invoice seeking an additional $1.8 million for design services AMI had rendered.  (ECF No. 1 ¶¶ 7, 65; see ECF No. 107 at 27–28 ¶¶ 34–35, 38).  As to outstanding invoices, GH asked AMI to provide "deliverables which are the product of AMI's work, as well as supporting documentation sufficient to establish AMI's entitlement to any further payment[,]" (ECF Nos. 1 ¶¶ 57, 66; see ECF No. 1-7 at 3), which AMI has not yet provided.  (ECF No. 107 at 25 ¶ 28, 28 ¶ 40).  Given that the designs for the Theater were incomplete and the cost estimates exceeded GH's budget, "there was little, if any, possibility" that the Theater project "could be completed in time for the opening of the 2023 theatrical season[.]"  (ECF No. 107 at 27 ¶ 37).  "[O]n information and belief," GH believes that "AMI has engaged in similar conduct on at least one other project for which it was hired to design and provide construction costing, which resulted in that end user deciding not to move forward with AMI on said project after AMI's cost-estimates greatly exceeded the end-user's budget[.]"  (ECF No. 107 at 28 ¶ 39).

## B.  Procedural Background

On February 26, 2024, AMI filed the Complaint, asserting claims for breach of contract, quantum meruit, and unjust enrichment.  (ECF No. 1).  On March 19, 2024, GH filed its Answer and Counterclaims for breach of contract, rescission, and negligent misrepresentation.  (ECF

No. 17).  Pursuant to the initial case management plan entered by the Honorable Analisa Torres,
the fact discovery deadline was October 25, 2024.  (ECF No. 28).

To address several discovery disputes between the parties (ECF Nos. 32; 47–48; 52–53),
the undersigned held several conferences with the parties.  (ECF Nos. 34; 42; 49; 51; 54; 57; ECF
min. entries dated July 22, 2024, Aug. 9, 2024).  Among the disputes the parties raised were AMI's
responses to GH's requests for production (the "RFPs") and AMI's responses to two of GH's
interrogatories: Interrogatory No. 17, seeking the identities of "all other projects on which [AMI]
was engaged" since January 1, 2020, and Interrogatory No. 18, seeking the amount of revenues
AMI billed or received from those engagements.  (ECF No. 109-1 at 11–12 (the
"Interrogatories")).  Following the August 9, 2024 conference, the Court ordered AMI to conduct
a reasonable search for and produce additional documents and information, and deemed those
rulings to resolve GH's objections to AMI's responses to the Interrogatories, to which the Court
did not require AMI to respond further.  (ECF No. 54 (the "August 2024 Order")).  The Court also
entered a revised case management plan extending the fact discovery deadline to
November 8, 2024, and setting a deadline of September 13, 2024 for service of non-party
subpoenas.  (Id.)  At the parties' request, the Court later extended these deadlines by one week,
to November 15, 2024 and September 20, 2024, respectively.  (ECF Nos. 60–61).

Beginning in September 2024, the parties engaged in settlement negotiations, which did
not result in a settlement and after which, in December 2024, the parties resurrected their
discovery disputes.  (ECF Nos. 66–77; 86–87).  The Court held further discovery conferences on
December 18, 2024, January 29, 2025, and March 13, 2025.  (ECF Nos. 78; 80; 86–88; 91; 93; 99;
100; 102; ECF min. entries dated Dec. 18, 2024, Jan. 29, 2025, and Mar. 13, 2025).  Following the

January 29, 2025 conference, the Court extended the overall fact discovery deadline to May 30, 2025, but the parties did not raise and the Court did not address the specific deadline for non-party subpoenas.  (ECF No. 99).

After GH indicated its intent to amend its Answer and Counterclaims, the Court entered a stipulation and order permitting GH to do so, and AMI to file a motion to dismiss if it so chose. (ECF Nos. 103–106).  On March 21, 2025, GH filed its Amended Answer and Counterclaims, which purported to add factual allegations based on information exchanged during fact discovery.  (ECF No. 107-1 at 16–29 ¶¶ 9–40).

On March 21, 2025, GH served copies of the Subpoenas on AMI.  (ECF No. 108-1).  The Subpoenas are directed to RTX Corporation, f/k/a Raytheon Technologies Corporation; The Boeing Company; and Dominion Energy, Inc. (together, the "Recipients").  (ECF No. 108-1).  The Subpoenas seek: (1) all agreements between the Recipients and AMI since January 1, 2021; (2) all invoices AMI sent the Recipients for work AMI performed; and (3) all communications between the Recipients and AMI about the work AMI performed or the invoices AMI sent.  (ECF No. 108-1 at 17, 32, 47).  On March 24, 2025, the parties met and conferred to discuss AMI's objections to the Subpoenas, but GH had already begun to serve them on the Recipients.  (ECF Nos. 108 at 1; 116-1 at 17–18 ("They were in the process of being served on the 24th, your Honor, but they weren't physically served, based on the affidavits, until the 25th.")).

On March 26, 2025, AMI filed the Motion, to which GH responded on March 27, 2025, and in support of which AMI filed a reply on March 28, 2025.  (ECF Nos. 108; 109; 112).  On April 11, 2025, the Court held a conference to discuss the Motion.  (ECF Nos. 110–11; 115; 116-1).  The Court directed GH to notify the Recipients of the Subpoenas that they were not required

to respond to or comply with the Subpoenas pending this Opinion and Order.  (ECF No. 116-1 at

23–24).

### III. DISCUSSION

#### A. Legal Standard

Federal Rule of Civil Procedure permits a party to serve a subpoena on a non-party to

produce documents.  See Fed. R. Civ. P. 45(a)(1)(D).  "The party issuing the subpoena must

demonstrate that the information sought is relevant and material to the allegations and claims

at issue in the proceedings."  Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382 (RWS),

2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2008); see Ireh v. Nassau Univ. Med. Ctr., No. 06 Civ.

09 (LDW) (AKT), 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008) (explaining that Rule 45

subpoena must meet "overriding relevance requirement"), aff'd, 371 F. App'x 180 (2d Cir. 2010);

see Fed. R. Civ. P. 26(b)(1).[1]  "Evidence that is irrelevant or may result in undue prejudice is

outside the scope of discovery."  Rosas v. Alice's Tea Cup, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015).

A party whose personal rights are implicated by a subpoena may move to quash or modify

the subpoena if it, inter alia, "requires disclosure of privileged or other protected matter, if no

exception or waiver applies[,]" or imposes an "undue burden" to comply.  Fed. R. Civ.

P. 45(d)(3)(A)(iii)–(iv).  In addition, the Court may consider the expense and inconvenience

imposed on the non-party to whom the subpoena is directed.  Night Hawk, 2003 WL 23018833,

at *8; see Fed. R. Civ. P. 45(d)(1).

Motions "to quash a subpoena are . . . entrusted to the sound discretion of the district

court."  In re Fitch Inc., 330 F.3d 104, 108 (2d Cir. 2003) (per curiam); see Gresch v. United Parcel

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Serv. of Amer., Inc., No. 21 Civ. 5383 (KPF), 2022 WL 1125621, at *1 (S.D.N.Y. Apr. 14, 2022) ("The

trial court has broad discretion to determine whether a subpoena imposes an undue burden.").

The district court also "has broad latitude to determine the scope of discovery and to manage

the discovery process." Hutchins v. Palmer, No. 12 Civ. 5927 (JFB) (AKT), 2015 WL 13713335, at

*13 (E.D.N.Y. Mar. 31, 2015). "Ultimately, the appropriateness of protective relief from discovery

depends upon a balancing of the litigation needs of the discovering party and any countervailing

protectible interests of the party from whom discovery is sought." Peddy v. L'Oreal USA Inc., No.

18 Civ. 7499 (RA) (JLC), 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019).

**B.  Application**

AMI argues that the Subpoenas should be quashed because (1) they are untimely, and (2)

they seek irrelevant and burdensome information.  (ECF Nos. 108; 112).[2]  We address both

arguments.[3]

**1.  Timeliness**

The Court finds that the Subpoenas are not untimely.  While AMI is correct that the

specific deadline for the parties to serve non-party subpoenas expired on September 20, 2024

(ECF Nos. 54; 61), the parties paused discovery for over two months to focus on settlement

negotiations, at the conclusion of which the Court extended the fact discovery deadline to

---

[2] AMI also asserted that GH failed to provide AMI with advance notice of the Subpoenas as required by Rule 45(a)(4).  (ECF Nos. 108 at 2 n.2; 112 at 2).  Following GH's clarification during the Conference, however, the Court finds that GH complied with Rule 45(a)(4) by serving AMI with notice of the Subpoenas on March 21, 2024, before GH served the Subpoenas on the Recipients.  (ECF Nos. 108-1; 116-1 at 8, 18–19).  While GH could have waited a few days to serve the Subpoenas on the Recipients, knowing that AMI had objections about which the parties needed to meet and confer, Rule 45(a)(4) did not require it to do so.
[3] GH does not dispute AMI's standing to move to quash the Subpoenas, nor could it, given AMI's legitimate privacy interest in the information the Subpoenas seek regarding AMI's relationships with its clients.  See Warnke v. CVS Corp., 265 F.R.D. 64, 66 (E.D.N.Y. 2010).

May 30, 2025.  (ECF Nos. 66–77; 99).  From mid-December until the present, the parties raised

and the Court held conferences to resolve numerous fact discovery disputes, demonstrating the

parties' understanding that fact discovery was and is ongoing.  (ECF Nos. 78; 80; 88; 91; 93; 99;

100; 102; ECF min. entries dated Dec. 18, 2024, Jan. 29, 2025, and Mar. 13, 2025).

      In addition, GH served the Subpoenas well more than 30 days before the fact discovery

deadline, giving the parties, the Recipients, and the Court sufficient time to address them before

that deadline.  This case is therefore unlike those on which AMI relies (ECF No. 108 at 2) where

parties served non-party subpoenas months after discovery closed and on the eve of trial.  See,

e.g., McKay v. Triborough Bridge & Tunnel Auth., No. 05 Civ. 8936 (RJS), 2007 WL 3275918, at

*2–3 (S.D.N.Y. Nov. 5, 2007) (declining to reopen discovery to permit service of a subpoena five

months after the close of fact discovery); Playboy Enters. Int'l Inc. v. On Line Entm't, Inc., No. 00

Civ. 6618 (RJD), 2003 WL 1567120, at *1 (E.D.N.Y. Mar. 13, 2003) (quashing subpoena that

plaintiffs served without permission "months after discovery closed, little more than a month

before trial").

      Accordingly, the Subpoenas were not untimely.

      **2.**  **Relevance and Burden**

      The Court finds that the Subpoenas do, however, seek irrelevant and burdensome

information and will be quashed on that basis.

      First, as AMI correctly points out, this action concerns the value of the design services AMI

provided pursuant to the Agreement to renovate and upgrade the Theater.  (ECF No. 108 at 2).

GH points to no authority supporting its argument that services AMI may have provided to

defense contractors has anything to do with the value of the services AMI rendered to GH and

the Theater here.  To the extent that GH claims this information pertains to AMI's quantum

meruit claim (ECF Nos. 109 at 2; 116-1 at 5, 13–14), GH is off-base because the only question is

"the fair and reasonable value of the work or services performed and materials furnished" to GH,

not the services that AMI provided to anyone else.  U.S. for Use of Wander v. Brotherton, 106 F.

Supp. 353, 354 (S.D.N.Y. 1952) (Weinfeld, J.); accord NASDI LLC v. Skanska Koch Inc., No. 17 Civ.

3578 (DLC), 2022 WL 16948235, at *3 (S.D.N.Y. Nov. 15, 2022); cf. Fung-Schwartz v. Cerner Corp.,

No. 17 Civ. 233 (VSB) (BCM), 2020 WL 4927485, at *8 (S.D.N.Y. Aug. 21, 2020) (finding that

evidence of defendants' treatment of other customers was irrelevant to plaintiffs' claims).

Indeed, New York courts have recognized that the most important evidence in determining the

fair and reasonable value of services are the plaintiff's invoices for the services they provided to

the defendant, not amounts charged to others.  See, e.g., Paul F. Vitale, Inc. v. Parker's Grille,

Inc., 23 A.D.3d 1147, 1147 (4th Dep't 2005) (holding that trial court properly determined fair and

reasonable value of plaintiff's services based on plaintiff's invoices to defendant and

subcontractor's invoices to plaintiff); United Bldg. Maint. Assocs., Inc. v. 510 Fifth Ave., 18 A.D.3d

333, 334 (1st Dep't 2005) (holding that trial court "properly based its calculation of the

reasonable value of plaintiff's services on evidence showing what plaintiff had billed for cleaning

the building prior to its sale" and properly excluded invoices of other service providers).  GH's

arguments concerning the relevance of the information the Subpoenas seek is simply

unpersuasive.

Second, even if the information were relevant—which it is not—compliance with the

Subpoenas would impose an undue burden on the Recipients to search for information that AMI

presumably has itself.  See Lemoine v. Mossberg Corp., No. 18 Civ. 1270 (KAD), 2020 WL 3316119,

10

at *1 (D. Conn. June 18, 2020) ("[C]ourts have consistently granted motions to quash where the subpoenaed documents were requested from or could have been requested from the party-opponent during the normal course of discovery."). GH points to AMI's refusal to answer the Interrogatories as the reason why GH could not get the information from AMI itself (ECF Nos. 109 at 3; 116-1 at 6–7). But following the August 2024 Order, GH never asked the Court to revisit GH's demand for information from AMI about what it charged other customers. (ECF No. 99). While, for the reasons set forth above, the Court would have been unpersuaded that such information is relevant, that is not an excuse for GH failing to raise the issue with the Court and simply doing an end run straight to AMI's customers. See Lemoine, 2020 WL 3316119, at *3 ("A Rule 45 subpoena is not an alternative to the meet and confer requirements of Rule 37 and the appropriate procedures for bringing discovery disputes to the Court for resolution."). If GH had a good faith basis for believing that information about AMI's other clients were relevant, the proper course would have been to request a discovery conference with the Court pursuant to Local Rule 37.2, not to serve blunderbuss subpoenas on the Recipients, which GH should have known could have disrupted AMI's relationships with these significant clients. GH's conduct suggests that its motives in issuing the Subpoenas were less than pure, which has been a ground on which courts in this district have issued sanctions. Cf. KGK Jewelry LLC v. ESDNetwork, No. 11 Civ. 9236 (LTS) (RLE), 2014 WL 1199326, at *6 (S.D.N.Y. Mar. 21, 2014) (granting sanctions for issuance of subpoenas that lacked a colorable basis, "were issued to either harass [a party] or to delay resolution of this action[,]" and "ha[d] the potential to have a negative impact on [the opposing party] because they may disrupt [the party's] affiliates' business relationships"). AMI

11

does not seek nor does the Court impose such sanctions here, but the decisions in such other cases support quashing the Subpoenas here.

## IV.CONCLUSION

For the reasons set forth above, the Motion is GRANTED and the Subpoenas are QUASHED.  By Monday, April 21, 2025, GH shall serve a copy of this Opinion and Order on the Recipients and file proof of service on the docket.

Dated:        New York, New York
              April 17, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

12